Good morning. We'll turn now to Fontenot v. Crow 19-7045. And Council, we are ready when you are. Thank you, Your Honor. May it please the Court, I'm Sherry Johnson with the Oklahoma Attorney General's Office for Appellant Respondent. We are here today because the District Court erred when it found Petitioner overcame the one-year statute of limitations under AEDPA. The state court's procedural bar of latches and Petitioner's failure to exhaust all his claims based on a finding of Brady violations and actual innocence. This error was compounded when the District Court proceeded to directly address the merits of Petitioner's submitted petition without granting Respondent the opportunity to file a merits response, which resulted in the District Court failing to apply the correct standard of review under AEDPA, which cannot be waived, and in failing to accord deference to the state court's decision on direct appeal, particularly in regard to the issues of the voluntariness and trustworthiness of defendant's confession, the sufficiency of the evidence, and the effectiveness of trial counsel. I'd like to start with the District Court's finding that of cause and prejudice based on the alleged Brady violations. Well, let me let me let's first talk about whether you were given an opportunity to respond when you filed your motion to dismiss. The court didn't limit your response, did it? No, your honor. The court gave you notice to respond. Yes, your honor. However, it was your choice whether to respond just on the issues resulting that could result in dismissal and on the merits or to just attack on the basis of dismissal. Isn't that correct? Yes, your honor. The state was provided the opportunity to respond. However, every federal district court in Oklahoma routinely allows time for a merits response after a pre-answer motion to dismiss is denied. And you did not ask for that permission to do a response, did you? I'm unclear on what you're asking. I'm sorry. Well, I'm looking at at Rule 5 of the rules governing 2254 cases and B says what your answer should contain, but it uses a mandatory word. It says contents. The answer must address the allegations in the petition. And then in addition, it can consider procedural problems. So I don't know why you I mean, I don't know why you would assume in that light of the mandatory must that you shouldn't have addressed the merits. You said at the very least, you had the opportunity to do so. And I would think that a prudent person, if you didn't want to do that, you would get some kind of an order from the court saying we're going to bifurcate that proceeding, notwithstanding that rule. Yes, your honor. I would point out that in our brief, we provide a list of cases, including the Eastern District, in which there is a routine practice that the state is permitted to file a pre-announcement. You're in state court now. You're in federal court now. There are cases where when the court asked for a response, it specifically limited the response to the motion to dismiss issues. And then later gave an opportunity if it didn't dismiss to handle the merits. So I think rule five is not your friend on this. I see your point, your honor. I would direct this court to there's an unpublished case from this court, Scott v. Romero. It's from 2005. And it specifically notes that rule 5A, while it explains that the respondent is not required to answer the petition unless the judge so orders, it notes that the advisory committee notes to the 2004 amendment state that revised rule five does not address the practice in some districts where the respondent files a pre-answer motion to dismiss the petition. Revised rule four permits that practice and reflects the view that if the court does not dismiss the petition, it may require or permit the respondent to file a motion. And it also states the rules do not prohibit the state from filing a motion to dismiss prior to filing an answer. And the advisory committee notes specifically recognize the district court's discretion to allow the filing of such motion in lieu of an answer. But the district court didn't exercise that discretion. We would argue that the district court abused its discretion by ignoring the routine practice in the federal courts of Oklahoma of allowing the respondent to file a pre-answer motion to dismiss without going into the merits. It's a matter of judicial economy for respondent to be able to Is there a local rule from the district that says that it should be bifurcated? Do you have anything like that? I do not, your honor. What I have is what's in the brief that lists all the cases in which we routinely do file a pre-answer motion to dismiss if we have procedural bars that may preclude the granting of relief. And the routine practices, if that motion to dismiss is denied, then the state would be permitted the opportunity to actually file a merits response. And the district court's failure to do so here resulted in relief being granted on every single claim without the proper standard of review being applied. Because even if the state theoretically could waive its right to respond on the merits, the standard of review cannot be waived. EDPA would still apply to cases in which we have a state court decision on the merits. And we do have that at least in several of petitioner's claims raised in his second amended habeas petition. Before we move on from this issue, it is true that you got to file a substantive response to the Brady claim at the request, request of the district court, right? It was a 30, 35 page brief on the Brady claim. That is correct. At the direction of the federal district court. And that was not a reply to the petition. If I recall correctly, that was the district court directed respondent to file a response to petitioner's reply. And I would also point out to the court that that brief related to the state's first motion to dismiss. I believe that was document 98, which was later deemed moot because petitioner was permitted the opportunity to amend his petition yet again. Do you propose any, this isn't quite the same as a offer of proof because we're talking about legal arguments, not factual statements, but do you at any point propose anything further you would have said about Brady? Or Brady is of course the big elephant in the room here that you haven't had the opportunity to say? I mean, I looked in your briefs and I never, I didn't see any statement about here's the things we would have liked to have said if we could have done it, had that opportunity. I think that the Brady issue was again, the brief also fails to accord deference to the factual findings of the state court. Even in the case, even in the grounds in which we don't have a state court merits adjudication, the state court's factual findings are still entitled to deference under 2254E1. That was not done. In particular, even the post conviction court made factual findings that petitioner had possession of the 860 pages of OSBI documents since 1992. Those 860 pages form the basis for the majority of petitioner's Brady claims. Petitioner did nothing from the time that he accepted a negotiated sentence of life without parole in 1995, which he did not appeal until he filed his claim, his first post conviction application in 2013. Petitioner had counsel for at least 10 years at that point and never filed a post conviction application. So I'm a little confused on what issue we're in right now. Is this a latches argument? Are we talking about exhaustion? There are so many issues that would be helpful for me if we could identify what we're talking about. Okay. I was actually elaborating on the question about whether or not we said everything we needed to say about Brady. If this court is satisfied with the response on the merit issue, I would like to point out the cause and prejudice issue. Again, the majority of the material that petitioner's relying on for his Brady and actual innocence claims was available to him since 1992. Well, and 1992 is after both trials, right? That is correct. So the big issue, it seems to me, is what is new evidence? I mean, do we look at what has been discovered or do we look at what wasn't presented? The jury never heard this evidence, correct? None of it. All, well, the 860 plus everything that's been trickling in after that. That is correct. The 860 pages were provided in between the, well, the brief, the direct appeal brief had already been filed. However, petitioner still had the opportunity to file a post-conviction application and present these claims to the state court. He did not. And that was part of the basis of the latches finding on the 2013 post-conviction claim was that too much time has passed due to petitioner's own inaction that his claims could have been petitioners relying on the fact that 30 some years have passed and evidence that has been misplaced and witnesses have died and investigators have died. It's difficult to ascertain exactly what happened. The time to have raised these claims were when they were ripe, when the evidence was handed over in 1992 and that failed to happen. So if latches would have been applied by the state, then doesn't that affect whether we have a mixed petition or whether we have, when we can look at anticipatory procedural bar and we can proceed to look at the merits of these claims? Your honor, I would argue that it does not because the specifically ground three relating to the alleged letter that was found. The attorney client letters. Correct. That is completely unexhausted. And if petitioner is submitting to this court that it's newly discovered evidence under Oklahoma's post-conviction act, he would be able to present that as newly discovered evidence in a subsequent post-conviction appeal. It would not automatically be subject to latches where that would be speculative to assume that. And it was petitioner's choice to amend his petition with unexhausted claims. He should be required to go back. If the petition is not dismissed for the time bar and procedural bar issues, he should be required to go back and exhaust his claims. I would like to save some time or rebuttal if this court. Yeah, if my colleagues will indulge me, I think this case is complicated enough. I mean, frankly, this is just like any other death penalty case. I think we'd be, we're planning to give you a little extra time. So go ahead and say what you need to say. And we'll do the same on the other side. Thank you. Regarding the alibi evidence, I would also argue that the issue about petitioner's alibi being at the party was never suppressed because petitioner knew where he was the entire time. He could have communicated that to counsel. Well, didn't he try in the letters that never got to counsel? The letters, we don't know where the letters came from. And I would argue that those letters don't look like they've ever been mailed. They're not folded. They're not marked legal mail. And if this court views those letters, they also look like maybe they were discarded. And that is equally as plausible and perhaps more so. There are stains all over them that could have been a rough draft that was never presented and perhaps discarded. What is in the record is that petitioner was in almost daily contact with his counsel during the pendency of both his trials. And it's unrealistic to assume that he never told his counsel where he was on the night of the murder while he was facing the death penalty, except in a single letter that just was never, you know, mailed or marked or anything. I think that's unrealistic. Also, if you view the evidence that petitioner is presenting in support of his claim that he was at the party all night, none of those affidavits say petitioner was at the party all night. At best, what it shows is that he was at a party, which was in his confession video. That was before the court and the jury. And that he was at a party at some point during the evening. And then he was there later when the police showed up around after midnight. It does not show that it was physically impossible for him to kidnap the victim at approximately 8.40 p.m., rape her and kill her, and then return to the party. I would also point out that the affidavit of Brewster Prater contains a really interesting statement that Brewster Prater talked about they were at the party and he talked about going to a college bar to perhaps go get women to bring back to the party. And that Mr. Fontenot made an inappropriate gesture by tugging on his belt and saying that he and Mr. Ward had already been with an older woman that evening. And that happened approximately 11 p.m. At that point, the victim was dead. And I would also point out that... Do we know the victim was dead? Do we know time of death? We do not. But based on Mr. Fontenot's confession about what happened when they took her and how long they spent raping her, I am making an assumption based on the evidence in the record. Okay. Well, the confession also says that they left her in a building that had been previously burned down and buried her in the floorboards, but she was found 30 miles away and she wasn't stabbed. She was shot in the head. So, I'm not sure that we can assume accuracy from the confession. But not every detail of a confession needs to be corroborated. And that's part of the problem here, too, is that the Court of Criminal Appeals found that Mr. Fontenot's confession was corroborated nine different ways. I would also note that the medical examiner testified at trial that due to the state of the bones, he was unable to determine whether or not the victim was stabbed. That in many cases, individuals are stabbed and there are no marks on the bones because generally, if there are marks, that happens on the cartilage and there was no cartilage here. Also, jumping ahead, I won't go there. I'm sorry. But you had just a factual question. Where is Mr. Fontenot now? Is he still in prison? No, Your Honor. He is out in the community. And I heard that and I'm intrigued. How is that the case? I mean, this appeal is still pending. Is he out because of Judge Payne's order? Or did that get stayed? Or did anybody request to stay? Or why is he out right now? Your Honor, I entered the case after the fact, but I'm familiar enough with the record just that the district court issued an order staying the retrial that was requested. Yeah, I thought so. I thought that was right. And I believe that the counsel at the time before his release, they set up conditions of release and I believe he's under some sort of supervision and perhaps a bond. But I do not know where he is right now. But I do know he is not in custody. Is he not in custody just because of the decision of the state? Or do you believe that somehow Judge Payne's order, a part of his order was not stayed to the extent that it required him to be out now? I mean, do you know any of the legal explanation of why he is out right now? I don't know it well enough to comment. I would tell you that based on my reading and from what I know from our office, Judge Payne's order is the reason that Mr. Fontenot was out in the community right now. After having been... But he did stay the retrial and ordinarily, I think I remember that his order was you will be, the defendant gets released or Ms. Payne gets released unless the court, there's a condition to the release. The release is he doesn't have to get released if the court has a re-hearing, a retrial, and then he stayed that retrial pending the appeal. So I'm I mean, I don't think it's going to drive the merits, but I'm just curious, but you've answered all. I don't want you to go outside the record and we've probably already done that a bit. So thank you. I'm going to ask you Ms. Johnson to wind it up because you're now almost five minutes over. Yes, Your Honor. Will I have rebuttal or should I conclude here? This will include your rebuttal. So save what you want. Okay. Thank you. I would request that the district court opinion be reversed and that the second amended petition be dismissed. Alternatively, I would request that the case be remanded with instructions to allow a respondent to respond to the merits of the petition. And if this court has concerns about Mr. Fontenot's custody status, certainly I would encourage it to issue an order relating to that. Thank you. Thank you. Ms. Murphy, you have to unmute your microphone. Thank you, Your Honor. Can you hear me okay? Yes. Thank you. And just so you know, we're going to give you extra time as well. Thank you, Your Honor. My name is Tiffany Murphy and I represent Carl Fontenot. I'd like to address a couple of things that the Attorney General's Office presented first off. First, in the opinion of the 191 page opinion and order, footnote one, Judge Payne specifically states respondent was ordered to respond to the second amended petition on February 14, 2019, which is docket number 118 pursuant to rule 5A and goes on to pretty much state the fact that they were directed to respond. Okay, so there is no ambiguity here. In addition, every motion to dismiss that the director filed also dealt with the merits along with any procedural defenses that they wanted to raise. So the idea that they did not have the opportunity to address the merits is baseless based on the record and specifically the directives of Judge Payne as he was reviewing this case. In addition, Your Honor, the director talks about the need for so many different petitions. And the reason that we needed so many different petitions, Your Honors, is because of the egregious misconduct of the director over this 35 year period of time where my client was innocent and incarcerated. The court found, Judge Payne found, that over that time period, the director violated two court orders and a federal subpoena in failing to disclose records that were exculpatory and impeachment evidence. And based on those voluminous over a thousand pages of records, Mr. Fosno established and the judge agreed and in a very detailed opinion explained why the actual innocence gateway was established. In addition and separate to that, why cause and prejudice was found. Okay, let me stop you for a minute because even if we assume that under McQuiggan you have a actual innocence gateway to get to consideration of the merits, there's nothing about McQuiggan or the actual innocence jurisprudence that would somehow displace the AEDPA standard of review, is there? When you get to the merits, you're under AEDPA, right? Your Honor, based on the state post-conviction courts and imposition of latches, which is a procedural bar, this case is outside the AEDPA. No, why? The procedural bar of latches maybe gets you over the exhaustion requirement because if you don't get over that, you've got a mixed petition and we don't have jurisdiction to hear it. But once you get through all your procedural bars and you get through the statute of limitations under AEDPA and you get to the merits, we have an AEDPA case. Your Honor, I would say the procedural bars are a separate prong under the AEDPA than exhaustion. Those are two different procedures. Correct, and the merits are separate from any of the procedural issues. And I will say, Your Honor, our position is this case is clearly an issue of procedural bars on the claims presented. However, under 2254 D.2, deference wouldn't apply here based on the actions of the Oklahoma Court of Criminal Appeals. In the middle of that direct appeal, which you guys talked about, which was discussed during the Attorney General's presentation, the court issued that order in December of 1992. There was a briefing already going on. And the fact that they filed that order, that all of the Oklahoma State Bureau of Investigation police reports be disclosed. Well, the government doesn't even argue that your Brady claim is unexhausted. They argue that you're just reiterating a prior Brady claim. So I don't think you need cause and prejudice or anything on your Brady claim because it hasn't been raised. Your Honor, I'm not sure I understand. The Brady claim was raised in state post-conviction and based on the failure to disclose the 300 pages of AEDA police reports that were released in 2019, Mr. Fongeno was required to file a second amended petition. Every time. And the government has not challenged that you didn't first present that petition to the state court. So I don't know, we need to argue about that, do we? I would say no. As far as the concern potentially that the Attorney General raised as far as exhaustion, based on the rulings of this court and Behr v. Boone, the idea is if there could be no meritorious or substantive review in state post-conviction on a successor application, that process can be bypassed. And in this court's rulings in Graham v. Royal and Bland v. Sherman, specifically this court has recognized Oklahoma does not allow substantive review on a successor application. In addition, on an innocence case very much similar to our case, Beverly Moore v. Embry, that case also has not been able to get substantive review on an innocence claim on a successor. So- So are you arguing the impossibility or waste of time to try to go back to Oklahoma? Is that futility? Is that your argument? Yes, Your Honor. And based on this court's jurisprudence, it is clear that it would be futile and this court has recognized that in cases before. So yes. And Judge Payne found- Do you have any other argument on the AEDPA evaluation itself? Your Honor, our position, and as I was explaining under D2, the facts of this case, no deference is required because on direct appeal, that court stated clearly that they didn't have everything when they made that ruling. Therefore, that ruling does not have deference. Your claims that are unexhausted are the attorney-client claim, the claim interference with attorney-client relationship. That's unexhausted, right? That is unexhausted, Your Honor. And the second one that I find that's unexhausted is the ineffective assistance of appellate counsel. So if those are unexhausted and if we don't have some way to avoid the procedural bar caused by non-exhaustion, I'm limiting it to exhaustion right now, then we don't have jurisdiction, right? Your Honor, I would say at this point, for two points that the district court found, the district court found that Mr. Fontenot's evidence of actual innocence was persuasive enough to get to that issue. In addition to that, district court- I think you're confusing- I don't think that exhausted or unexhausted gets us to actual innocence. Exhausted or unexhausted has to do with the respect of the federal court for the state court to give them the first opportunity to protect Mr. Fontenot's constitutional rights. And so it feels to me like you're confusing legal concepts. Your Honor, I would say at this point, based on this court's ruling on futility, the exhaustion issue- this court has ruled that when a successor application goes back, which would happen here, if Mr. Fontenot was required to go back to state court to exhaust, they would impose procedural bars. Okay, so you're arguing- Yes, they would impose procedural- Procedural bar is your argument. Not futility. Anticipatory procedural bar. Yes, Your Honor. I understand that. So yes, the state court would impose a procedural bar for a successor application. Therefore, Judge Payne imposed that bar on those claims in his assessment in the order. I didn't know if there was any follow-up on that issue, Your Honor. No, I understand it now. Thank you. Okay. The other thing that the Oklahoma Attorney General's Office brought up was this idea of that because of the director's repeated failures to comply with court orders and subpoenas, that this case takes so long. And the fact that this case took extra years, and it was required to file an amended petition, and a second amended petition, because they never complied with the rulings of the state court regarding discovery and disclosure, and at every phase, and this is clearly explained in Appendix 1 of Apelli's brief, the harm done to Mr. Fontenot by this piecemeal discovery in violation of state orders and a federal subpoena. And Judge Payne explained that in his opinion, and the egregious conduct that led to what he termed a fraud on the court. And I really want the court to understand why in this situation, all of these additional petitions were necessary and were driven by the actions of the Oklahoma Attorney General's Office and the state of Oklahoma in not complying with two court orders and a subpoena. In addition to that, the idea that the director was somehow deprived is refuted again by the record. The record shows the district court accommodated every continuance and request that they had and allowed them, and they did, to file detailed motions on all the claims in each of the petitions. Well, there was a specific allowance of a subsequent Brady brief, but what other briefing was specifically allowed of the government on the merits? The court directed them to respond in each of the petitions to the actual under 5A, as this court talked about, to all of the claims raised in the petition, which the opposing counsel did in each motion to dismiss in their subsequent pleadings. Well, I mean, we have Brady, we have ineffective counsel, for example. So, was there a specific opportunity for the government to the state to file briefing on ineffective assistance of counsel, not public counsel, but counsel? Yes, they did. What other merits issues? There's so much here, it's hard to keep it all straight. But what other merits issues did the court rely on? And just take them off and tell me specifically if the state had an opportunity to respond on the merits on briefing? Your Honor, the state responded in its last motion to dismiss, they talked about the alibi evidence, which is part of the Brady claim. They talked about why ineffective assistance of counsel was not found. They touched on the per se Sixth Amendment claim in their last motion. They talked about, you know, issues with the confession and how the district court, you know, and how it was raised in the Second Amendment petition. So those were all raised in their motions to dismiss. This idea that they were somehow prejudiced is not proven out and is even more egregious when they finally, when they repeatedly don't disclose records in this case. Records that were exculpatory and impeachment. So yes, Your Honor, they had opportunities numerous times and were directed by the district court to respond. I suppose they might also have had an opportunity to request the right for briefing. Did they ever make a specific request for further merits briefing? That is before the district court entered its ruling. Did they ever request additional briefing that the court denied? No, Your Honor. Not once in a record over three and a half years. Thank you. Assuming for a moment that we agree with you on exhaustion and we agree with you on an actual innocence gateway to get you past the EDPA statute of limitations and we get to the merits. Isn't Miss Johnson correct that the district court did not apply the correct EDPA standard of review? No, Your Honor. Judge Payne did apply the correct EDPA standard. He gave a presumption of correctness to the factual findings of the state court and you can find that in footnotes four of the opinion, which is a requirement under E1. In addition, he also went through all of the claims and talked about the stuff raised, the claims raised and the evidence presented as far as the state post-conviction court, which is the lion's share of not all of the claims raised in this petition. And then he found that the procedural bars would apply both anticipatorily and straight from state post-conviction and found that those procedural bars are adequate independent and then went through the proper analysis as required by the Supreme Court and the where 2254D applies where there's a deference ruling because all of it's procedurally barred. For the Attorney General's argument as far as the confession, our position is, or Mr. Fontenot's position is, and actually Judge Payne found this specifically, the idea that the Oklahoma Court of Criminal Appeals order, they did not state that did not have all the facts and ruled anyway. There is no statute of limitations in Oklahoma for non-capital applications for post-conviction relief. So there is no time issue there as far as when that application could have gotten filed. And so in that regard, there is no issue as far as when he should have done something as far as that because there was no time limit as far as that application happened, which happened in 2014. So Your Honor, based on all of those reasons, the District Court found in its opinion that there was ground for actual innocence. He considered McQuiggan v. Perkins in relation to time and then applied the proper standard for actual innocence under Schlute, House, and its progeny. Further, he did a separate assessment for cause and prejudice under Murray v. Carrier, Strickler v. Green, Banks v. Dredke, and he found in that regard that the application, that the consistent misconduct of the Attorney General's office contributed to the delay and the problems that Mr. Fontenot faced in litigating his claims before the trial court, the direct appeal court, the post-conviction court, and even before himself. Your Honor, Carl Fontenot is innocent. He has been in prison for, he was in prison for 35 years for a crime he didn't commit, and Judge Payne found that based on the misconduct over that period of time from this from this state of Oklahoma. His trial attorneys filed numerous discovery motions that covered all of this information. Currently, Mr. Fontenot is out on bond, and he's on supervised release based on an order from this court authorizing him to pursue bond. But he is still in limbo, Your Honor. He can't vote. He can't hold a job. He can't travel. He is still under this sentence, and Your Honor, I ask, Mr. Fontenot asks that you affirm Judge Payne's well-reasoned and thought-out opinion and affirm him relief. Affirm the relief found by Judge Payne. If there are no further questions, Your Honor. Would the relief involve the possibility, perhaps unlikely, of a new trial? Your Honor, I am not sure. I know that is something that Judge Payne ordered, but I am not sure what part of the state's case potentially remains given over the thousand pages that refutes every aspect of their case that they presented at the time of trial. Thank you. Thank you, Your Honors. And Ms. Johnson, you have rebuttal time. And you're muted there. Thank you. Your Honor, I just wanted to touch briefly. First off, the petitioner's Brady claims were not exhausted for purposes of cause and prejudice because in the state court in his post-conviction proceeding, he raised a substantive Brady claim, but his cause and prejudice was a conflict of interest with post-conviction counsel. But you didn't challenge exhaustion on the Brady claim. I believe we did, Your Honor. I may be confused, but the substantive claim is exhausted. As far as cause and prejudice to overcome the procedural and time bars, it was not. And the cause and prejudice itself needs to be exhausted. But no, the substantive claim itself is exhausted. I think that could be the clarification. So the substantive claim is exhausted. Yes, Your Honor. Thank you. I would also point out that while there is no statute of limitations on a state post-conviction application, there is a statute of limitation for a habeas petition. And petitioner had post-conviction counsel from 2003 to 2013 and then when the Innocence Project picked up. Petitioner had the 180 pages of OSBI documentation from 1992 on and did nothing with it, sat on right claims, could have brought those claims. And petitioner has not shown how the government interfered with his ability to present his claims in a timely fashion. And where we are now is that we have an inability to figure out exactly what happened due to the passage of time. Also, petitioner ignores the fact that the alleged wrongdoing was addressed in that sanctions hearing and respondents' actions were not found to be attributable to the non-disclosure of the aid of police reports. Moreover, the information that was discovered in 2019 was simply misplaced and I would direct the court to. I'm going to ask you to wind it up because. Oh, I'm sorry, Your Honor. Counting way down into extra time. I will conclude and simply just ask that the district court opinion be reversed and the second amended petition be dismissed and that in the alternative that the state be permitted to that the correct at the difference can be applied to this case. Thank you. Thank you, counsel. This is a difficult case and we will take it under advisement. We appreciate your argument this morning.